UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No.: 05-189(JDB) |
| | : | |
| MICHAEL JACKSON and | : | |
| MONICA MASON, | : | |
| | : | |
| Defendants. | : | |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTIONS TO SUPPRESS
EVIDENCE AND STATEMENTS

The United States, by and through its attorney, Kenneth L. Wainstein, the United States Attorney for the District of Columbia, hereby submits its opposition to defendants' Motions to Suppress Evidence and Statements. In support of this pleading, the government makes the following representations:

STATEMENT OF FACTS

Defendant Michael Jackson is charged by indictment with one count of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of Title 18, U.S.C. section 922(g)(1). Defendant Monica Mason is charged with one count of Carrying a Pistol without a License in violation of Title 22, District of Columbia Code, section 4504(a). The facts are that on March 8, 2005, at approximately 9:40pm, officers from the Metropolitan Police Department (hereinafter MPD) were called by the District of Columbia Housing Police to respond to the area in front of 2375 11th Street, NW, in Washington, DC, for a report of a vehicle occupied by two people with a gun. Mr. Jackson had been observed

holding the weapon, and then putting it into a black bag and handing it to Ms. Mason. They arrived on the scene, and saw the two defendants sitting in a blue Honda Accord station wagon with DC temporary tags drinking from a clear plastic cup that bore the odor and color of an alcoholic beverage. Both defendants were placed under arrest for possession of an open alcoholic beverage container. Search incident to the arrest revealed the black bag in the front seat behind Ms. Mason, which contained a silver and brown Smith and Wesson 41 caliber Magnum revolver model 57, which had been stolen from Martinsburg, West Virginia. The weapon was loaded with 6 41 REM Live full metal jackets hollow point copper and gold rounds in the cylinder. Search also revealed a brown wrapped marihuana cigarette in defendant Mason's purse.

**ARGUMENT**

**I. The gun in this case was lawfully obtained by the police and therefore should not be suppressed.**

The defendant moves the Court to suppress the weapon and the ammunition found in this case, stating generally that since this was a warrantless arrest, it must be supported by a limited exception to the warrant requirement, such as probable cause, (See Defendant's Motion to Suppress, page 2. ) Defendant further states here, the government can show no legal exception to the warrant requirement, and that consequently, the physical evidence in this case must be suppressed as the tainted fruit of this illegal stop. However, defendant's motion will fail because they were  was stopped and arrested by the police as a result of the fact that they were in possession of a open container of alcohol, and the gun was validly located and seized during the subsequent search incident to arrest for that charge. Alternatively, the defendants were detained during a valid

2

investigative stop or detention, and the gun was validly located and seized during a lawful search of the vehicle which ensued. Under either alternative, their resulting arrest for the possession of the handgun was therefore based on probable cause., and the motion to suppress should be denied.

**1. The gun was recovered during a valid search incident to the arrest of the defendants for possession of an open container of alcohol.**

When officers arrived on the scene to investigate the gun complaint, they encountered the two defendants siting in the vehicle, drinking from a clear cup with the odor and color consistent with alcohol. Consequently there was probable cause to arrest them for the possession of an open container of alcohol, in violation of 25 District of Columbia Code § 1001(a)(2).

After executing a valid arrest of the defendants, the police were entitled to search their vehicle pursuant to that arrest. See New York v. Belton, 101 S.Ct. 2860 (1981). The remaining contraband and tangible evidence, that is, the gun and the marihuana cigarette, were found pursuant to that lawful search, and should not be suppressed.

**2. The gun was recovered as a result of a valid Terry frisk of the vehicle based on the information that the officers had received regarding the presence of the gun inside.**

In Terry v. Ohio, 392 U.S. 1 (1968), the Supreme Court stated that "[s]treet encounters between citizens and police officers are incredibly rich in diversity," Id. at 13, and held that a police officer may stop and frisk a citizen even in the absence of probable cause if the officer knows reasonable articulable facts which, together with rational inference from those facts can justify such a momentary detention. Id. at 21; accord United States v. Brignoni-Ponce, 422 U.S. 873, 878-881 (1975).

> In <u>Adams</u> v. <u>Williams</u>, 407 U.S. 143 (1972), the Supreme Court admonished:
>
> The Fourth Amendment does not require a policeman who lacks the precise level of necessary information for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, <u>Terry</u> recognizes that it may be the essence of good police work to adopt an intermediate response. <u>Id</u>. at 145.

Moreover, the determination of reasonableness under <u>Terry</u> is not simply an academic exercise but must be considered from the perspective of a "reasonable and cautious police officer on the scene, guided by his training and experience." <u>United States</u> v. <u>Allen</u>, 203 U.S. App. D.C. 17, 21, 629 F.2d 51, 55 (1980), citing <u>United States</u> v. <u>Young</u>, 194 U.S. App. D.C. 377, 379, 598 F.2d 286, 288 (1979); <u>see</u> <u>Adams</u> v. <u>Williams</u>, <u>supra</u>, 407 U.S. at 145-146; <u>Terry</u> v. <u>Ohio</u>, <u>supra</u>, 392 U.S. at 27; <u>Crawford</u> v. <u>United States</u>, 369 A.2d 595, 599 (D.C. App. 1973).

Under <u>Terry</u>, reasonable and articulable suspicion that a suspect is committing, or has committed, a crime can permit the police to stop the suspect for a reasonable period of time to evaluate the situation. <u>E.g.</u>, <u>United States v. Gale</u>, 952 F.2d 1412 (D.C. Cir. 1992); <u>United States v. Clipper</u>, 973 F.2d 944, 946 (D.C. Cir. 1992), <u>cert</u>. <u>denied</u>, 113 S. Ct. 1025 (1993); <u>United States v. Laing</u>, 889 F.2d 281, 285 (D.C. Cir. 1989), <u>cert</u>. <u>denied</u>, 494 U.S. 1069 (1990). A protective search during a <u>Terry</u> stop is permissible if the officer

> has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. <u>The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger</u>.

<u>Laing</u>, 889 F.2d at 285 (quoting <u>Terry</u>, <u>supra</u>, 392 U.S. at 27) (emphasis added).

4

In <u>Stephenson</u> v. <u>United States</u>, 296 A.2d 606, 609 (D.C. 1972), <u>cert</u>. <u>denied</u>, 411 U.S. 907 (1973), the D.C. Court of Appeals identified the following factors for assessing the sufficiency of an officer's suspicion:

> (1) the particular activity of the person stopped for questioning which the officer has seen; (2) that officer's knowledge about either the activity observed and/or the area in which the activity took place; and (3) the immediate reaction or response of the person approached and questioned by the officer.

<u>See</u> <u>also</u> <u>Peay v. United States</u>, 597 A.2d 1318, 1322 (D.C. 1991) (<u>en banc</u>) ("[t]he personal safety of a police officer in a confrontation is a relevant consideration in the *Terry* equation.")

Here, the officers received information that a car fitting the description of the defendant's car, with occupants who fit the description of the two defendants here, were in possession of a handgun. In fact, the MPD officers were directed to the defendants and their vehicle over the radio as the officers came onto the scene. On those facts, the MPD officers were certainly justified in stopping the vehicle and detaining its occupants long enough to investigate whether they were involved in the robbery. Since the information they received involved subjects who were armed, the officers were justified in getting the occupants out of the vehicle and frisking them for their safety. <u>See</u>, <u>eg</u>., <u>Pennsylvania</u> v. <u>Mimms</u>, 434 U.S. 106 (1977). The evidence in this case also lends itself to that conclusion, and the government posits this as an alternative argument against the suppression of the contraband and other tangible evidence in this case.

**II.  The statements made by defendant were not made in response to custodial interrogation, and were made freely and voluntarily by the defendant. Consequently they should not be suppressed.**

In his motion, the defendant states that the government will not be able to show that the defendant has knowingly and intelligently waived his Miranda rights, and that therefore his statements are inadmissible.[1] ( See Defendant's Motion to Suppress, page 4, number 2.) However, the evidence will show that while on the scene, after the gun was located, the defendant spontaneously stated to Officer Elliot words to the effect of " "I just got shot; I just got shot in September.  I be scared as shit, I stayed scared. People shot me and killed my aunt." Later, after the arrest in this case, defendant was transported to the police station, Third District. There, he was read his Miranda rights, and he waived them, signing a form to that effect. Under these circumstances, defendant's rights under Miranda were not violated.  Since the defendant initiated his statement to the police, Miranda was not violated. See Edwards v. Arizona, 101 Sct 1880 (1981). Any subsequent statements that he made were after he had received and waived his Miranda warnings, and consequently were valid.

---

[1] See Miranda v. Arizona, 90 S.Ct. 140 (1969).

WHEREFORE, for these reasons and any other reasons as may appear to the Court at a hearing on this matter, the government submits that the evidence and the statements in this case were lawfully obtained, and that consequently, the defendant's Motion to Suppress Evidence and Statements should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN.
UNITED STATES ATTORNEY

By: _____
 WANDA J. DIXON
Assistant United States Attorney
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4235
Washington, D.C. 20530
202/514-6997